DOMENGEAUX, Judge.
Earl W. Perrin and Jeanette Miller Per-rin commenced these proceedings seeking possession of a certain tract of land in Jefferson Davis Parish, Louisiana. The Perrins named as defendants, Thomas R. Miller and Phyllis Ann Gary Miller. The property in issue, consisting of approximately two and one-half acres, was described as:
The South Half (S/2) of the West Half (W/2) of the East Half (E/2) of the East Half (E/2) of the North-east Quarter (NE/4) of the Northwest Quarter (NW/4) of Section Twelve (12), Township Nine (9) South, Range Six (6) West, Louisiana Meridian.
The Millers, subsequent to answering the Perrins’ petition, filed a reconventional demand alleging ownership of the property and converting the possessory action into a petitory action. The Trial Judge rendered judgment in favor of the Perrins recognizing their right to possess the property. The Court rejected the Millers’ reconven-tional petitory action.
A petitory action, as delineated by La. Code Civ.Proc. art. 3651 (1960) (amended 1981), is an action:
brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff’s ownership.
The Millers, upon filing their reconventional demand asserting title in themselves, converted the possessory action into a pet-itory action and, thereby, “judicially confess[ed] the possession of the plaintiff[s] in the possessory action.” La.Code Civ.Proc. art. 3657 (1960). Converting the possesso-ry action into a petitory action shifted the burden of proof from the Perrins to the Millers. The Millers’ burden in the petitory action was to establish that they had acquired ownership from a previous owner or by acquisitive prescription. La.Civ. Code art. 531 (1979); La.Code Civ.Proc. art. 3653 (1960); See also, Suire v. Primeaux, 363 So.2d 963 (La.App. 3rd Cir.1978), writ denied, 365 So.2d 243 (La.1978). Particularly relevant to the instant case, .as the facts will reveal, is the fact that when the “titles of the parties are traced to a common author, he is presumed to be the previous owner.” La.Civ. Code art. 532 (1979); La. Code Civ.Proc. art. 3653, supra.
A study of both the Perrin and Miller chains of title reveals that both are traceable to a common author. The comments to Article 532 indicate that the plaintiffs in a petitory action, in this case the plaintiffs-in- *116 reconvention, are entitled to judgment recognizing their ownership against the defendants or defendants-in-reconvention who are in possession if the plaintiffs can establish the more ancient title from the common author. One aspect of this case which makes it particularly unique is that although both parties can trace their titles to a common author, an individual by the name of Charles E. Smith, neither party can lay claim to having the more ancient title because both chains commenced from sales executed on March 30, 1903. The burden on the Millers at trial was, therefore, to prove that they had acquired title to the property by acquisitive prescription.
Acquisitive prescription is defined by the Civil Code as “A mode of acquiring ownership or other real rights by possession for a period of time.” La.Civ. Code art. 3446 (1982). Ownership of immovable property may be acquired prescriptively by possession for either ten years or thirty years. The prerequisites for ten years acquisitive prescription are: “possession for ten years, good faith, just title, and a thing susceptible of acquisition by prescription.” La.Civ. Code art. 3475 (1982). A thirty year prescriptive title requires neither good faith nor just title, but merely possession for thirty years. La.Civ. Code art. 3486 (1982).
The Millers, the defendants in the original possessory action and the plaintiffs-in-reconvention in the petitory action, sought this appeal and have assigned five errors. They assert that the Trial Court erred in the following respects:
(1) The Trial Court erred in failing to conclude that their acts of corporeal possession were open and notorious, thereby, precluding the commencement of ten years acquisitive prescription;
(2) The Trial Court erred in failing to tack their possession to the possession of their ancestors-in-title;
(3) The Trial Court erred in concluding that the property in issue was not susceptible to constructive possession because it was not fully within visible boundaries;
(4) The Trial Court erred in failing to conclude that their acts of possession were inadequate to satisfy the requirements of thirty years acquisitive prescription; and
(5) The Trial Court erred: (a) in failing to consider the parties’ respective record titles; and (b) in concluding that the Perrins had a better title.
We will initially address the Millers’ first four assignments of error. These assignments challenge the Trial Court’s decision that the Millers’ acts of possession and those of their ancestors-in-title were inadequate to provide the defendants with the right to assert ownership based on possession for either ten years or thirty years. Subsequent to our review of the testimony, we do not believe the Trial Judge erred and, therefore, affirm this aspect of the lower court judgment. La.Civ. Code art. 2324.1 (1984); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Possession is defined by the Civil Code as “the detention or enjoyment of a[n] ... immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name.” La.Civ. Code art. 3421 (1982). The type of possession necessary to acquire acquisitive prescriptive rights “must be continuous, uninterrupted, peaceable, public and unequivocal.” La.Civ. Code art. 3476 (1982); See also, La.Civ. Code art. 3488 (1982). The party seeking to assert title by acquisitive prescription need not have been in possession for the entire prescriptive period as the possession of one’s transferor may be “tacked”, presupposing there has been no “interruption”. La.Civ. Code art. 3442 (1982). The possessor also need not have continually remained on the property for the entire prescriptive period; once corporeal possession has been established the possessor is deemed to retain civil possession until an interruption occurs. La.Civ. Code art. 3431 (1982).
Specifically addressing ten years acquisitive prescription, the Millers, because they have a “just title”, a juridical act sufficient to convey ownership rights, need not have been in possession of the entire tract in *117 controversy. The doctrine of constructive possession provides that possession of part of an immovable under title is possession of the entire tract described within the title, satisfying the physical possession requirements. La.Civ. Code arts. 3426 and 3483 (1982).
The Millers maintain that they acquired the property in issue by way of two acts of sale, one passed on April 30,1982, by which they acquired a one-third interest from J.D. Racca and Gayle Racca and the other act passed on November 18, 1982, by which they acquired the other two-thirds interest from Victoria S. Miller, Debbie Augustine Miller, Cynthia Nan Miller Pousson and Russell Pousson. Testifying on their behalf was J.D. Racca, and his brothers, Elvin Racca and Dr. Herman Racca.
J.D. Racca testified that he purchased the property in question in 1968 from the Estate of Alfred J. Krower and that he was very familiar with the property long before he purchased it. J.D. testified that prior to his acquisition, and as early as 1936, his father, “Alpha” Hebert Racca had leased the property from Krower for the purpose of running cattle. The witness stated that his father also maintained the fences to keep his cattle from wandering free. The defendants introduced into evidence in support of Racca’s testimony, three checks, the earliest dated 1955, which represented rental payments.
J.D. Racca also testified about acts which Krower undertook during his period of ownership and about acts which he undertook on the property subsequent to his acquisition in 1968. Racca testified that Krower executed a mineral lease in 1959 and in 1960 granted a right of way. He testified that after he purchased the property he worked to clear the land from 1968 to 1971. He advised the Court that he moved from the property in 1972, but that he continued to maintain the fences along the southside, hunted and allowed hunting clubs on the property and stored farm equipment, including tractors, combines, tanks and trucks on the property. Racca further stated that he ran a pipeline, but he could not remember when, that he granted three mineral leases in 1968,1980 and 1982, respectively, and that he granted a mortgage on the property in 1981.
Elvin Racca, who was sixty-nine at the time of trial and who would have been eighteen in 1936, also testified on the behalf of the Millers. Elvin testified that his father leased the property in question from Alfred Krower, that he farmed the land and ran cattle on it every other year and that his father built a fence along the north side in 1938. Racca further advised that J.D. cleared a portion of the land after he purchased it in 1968 and that tools and a welding machine had been stored on it. Elvin did, however, state that it had been ten years since he was last on the property and that he was not sure of the boundaries.
Dr. Herman Racca testified that his father was a farmer and a rancher. He stated that his father ran cattle on the property in question, but he did not remember his father ever farming the land. Rac-ca testified that he helped his father maintain certain border fences, but was not aware who built them.
Testifying on behalf of the Perrins was Clarence W. Guthrie, Gloria Sinegal Currie, Virgie Sinegal Jackson and one of the original plaintiffs, Earl W. Perrin. Clarence Guthrie, who was seventy-three years old at the time of the trial, testified that he had lived on the land adjacent to the property in dispute for over forty years and that he knew Herbert Racca, the father of the defendants’ witnesses, well. Guthrie stated that he had picked berries on the disputed property since he was three years old and that for the last thirty or thirty-five years the property has been thickly overgrown with pine, live oak, tallow and briar. He did not recall the land ever having been cleared, nor did he ever remember seeing the Raccas repairing the border fences. Guthrie concluded his testimony by stating that he never saw farm machinery parked on the property, but he did recall seeing machinery being stored on neighboring property owned by Union Texas Petroleum.
Gloria Sinegal Currie testified that she was sixty-two years old and that her family had owned the property on the western *118 border of the property in dispute since she was two years old. Currie told the Court that she lived on the neighboring property continuously until 1968 and then again continuously since 198|>. She stated that between 1968 and 1985 she lived out of state, but that she returned every two or three months to care for her parents.
Currie testified that the property in issue was thickly overgrown and that she did not recall anyone ever clearing the land. She stated that, although she did not ever see Herbert Racca running cattle on the land nor any signs that cattle had been present, she did remember Racca pasturing cattle on another tract of land owned by an oil company. Currie further testified that she never saw machinery parked on the property nor did she ever remember seeing the Raccas repair the fences. She concluded by advising the Court that her father had built the north-south fence bordering the property and that she helped maintain it, but she could not recall an east-west fence.
Yirgie Sinegal Jackson, Currie’s sister, testified that she was fifty-eight years old and that she had lived on the property in the years preceding 1958 and subsequent to 1979. She stated that between 1958 and 1979 she returned annually for two or three months. Jackson stated that the property in question was wooded and that she did not ever see cattle or machinery on the land. She testified that her father built the north-south fence and that her sister maintained it, but she could not recall an east-west fence.
Earl W. Perrin testified that he owned two and one-half acres adjacent to the property in question and that he purchased the property in dispute in 1973 from Louise Levy. Perrin testified that although he did not purchase the property until 1973 he has resided on it since 1970. The plaintiff stated that since 1970 he has not noticed any animals grazing, nor any signs of animals, nor has he seen any machinery parked on the land. Perrin did state, however, that he recalled machinery having been stored on property owned by Allied, presumably an oil or chemical company.
Perrin introduced, in support of the testimony that the property was wooded and not suited for pasturing cattle, six photographs taken in March of 1986. The photos, as the Trial Judge stated in his “Reasons For Judgment”, “graphically” depict the nature of the property as thickly overgrown with dense vegetation and bushes.
Based on the above evidence, the Trial Judge held for the plaintiffs-appel-lees. Bearing in mind the broad discretion afforded Trial Judges to weigh evidence and review credibility, we find no manifest error and conclude that this aspect of the judgment of the District Court should be affirmed.
The Millers’ fifth assignment of error maintains that the Trial Judge erred in failing to review the parties’ respective record titles and in concluding that the Perrins had better title to the property. The Millers, as previously addressed, conceded the possession of the Perrins, were required by law to establish that they had a more ancient title from a previous owner or had acquired the rights of ownership by acquisitive prescription. See, La.Civ. Code art. 531, supra. In this instance, both parties’ chains of title derive from Charles E. Smith and both commenced on March 30, 1903. The only distinguishing feature of either chain of title is that the Perrin chain was recorded on April 11, 1903, and the Miller chain was not recorded until April 20, 1903. We, therefore, believe that this assignment of error lacks merit.
For the above and foregoing reasons, the judgment of the District Court is affirmed.
All costs of this appeal are assessed against Thomas R. Miller and Phyllis Ann Gary Miller.
AFFIRMED.